UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| NATIONAL FISH & SEAFOOD, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | CIVIL ACTION No. 3:15-cv-3880 |
| v. | ) | |
| | ) | JURY TRIAL DEMANDED |
| GREAT AMERICAN INSURANCE COMPANY, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT AND JURY DEMAND

This action arises out of the failure of defendant, Great American Insurance Company ("GAIC"), to honor its obligation under an Open Cargo Insurance Policy With Special Seafood Provisions (the "Policy") to compensate National Fish & Seafood Inc. ("National Fish") for loss resulting from a substantial ammonia leak at a temperature controlled storage facility in Dallas, Texas which took place on or about June 9, 2015.  National Fish timely notified GAIC of the ammonia leak and resulting damage to approximately 2,667,382.5 pounds of frozen shrimp and clam merchandise, and submitted proof of its loss in accordance with the Policy, and GAIC has failed to pay such loss in full within 30 days of its receipt of the referenced proof, as required by the Policy.  National Fish accordingly brings this action for breach of contract, declaratory judgment and unfair trade practices.

## PARTIES

1.      Plaintiff National Fish & Seafood, Inc. ("National Fish") is a corporation organized under the laws of the Commonwealth of Massachusetts, with a principal place of business at 11-15 Parker Street, Gloucester, Massachusetts 01930.

2.      On information and belief, defendant Great American Insurance Company

("GAIC") is a corporation organized under the laws of the State of Ohio, with a principal place

of business at 301 E. Fourth Street, Cincinnati, Ohio 45202.  On information and belief, GAIC is

licensed by the Texas Department of Insurance to conduct business in this state and has

appointed CT Corporation System, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201,

as a registered agent to accept service in this state.

## JURISDICTION AND VENUE

3.      Jurisdiction is based upon 28 U.S.C. § 1332(a) and (a)(1), in that the amount in

controversy exceeds $75,000, exclusive of interest and costs, and the controversy is between

citizens of different states.

4.      Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(1) and (b)(2)

because GAIC is a corporation subject to personal jurisdiction in this state, and thus is deemed to

reside in the Northern District of Texas under 28 U.S.C. § 1391(c)(2), and a substantial part of

the events or omissions giving rise the claim occurred in this judicial district.

## FACTS

### The Policy

5.      In exchange for payment of the premium due thereunder, GAIC issued to

National Fish an Open Cargo Insurance Policy With Special Seafood Provisions, Policy No.

OMC9150203.  The Policy took effect on January 1, 2015.

6.      National Fish paid GAIC the premium owed under the Policy.

7.      GAIC agreed in the Policy, per Endorsement No. 15 ("Warehouse and Processing

Location Coverage") to insure National Fish against "**Perils for insured goods in controlled

temperature Storage Facilities**," specifically, "All Risks of physical loss or damage from any

external cause ...."  Endorsement No. 15 provided coverage for National Fish's goods while such

goods were stored at a variety of specifically identified locations, including Americold Cold Storage in Dallas, Texas (the "Americold Facility"). With respect to the Americold Facility, the limit of liability of the Policy was fixed at $20,000,000.

8.      Endorsement No. 15 of the Policy covers "Goods . . . including . . . merchandise, or property of every kind incidental to the Assured's business, including "**Seafood,**" while situated at a storage facility or a processing facility."

9.      The Policy defines "goods" "per the definition as found in the most recent version of Black's Law Dictionary." Black's Law Dictionary (10th Ed. 2014) defines "goods," *inter alia*, as "[t]angible or movable personal property other than money; esp., articles of trade or items of merchandise ...." The Policy defines "**Seafood**" as "any form of sea life regarded as food by humans ...."

10.     Per its Declarations, the Policy provides that, with respect to "Seafood goods and merchandise," valuation, as per Clause 9, is "at amount of invoice, including all charges in the invoice and including prepaid and/or guaranteed and/or advance freight, if any, plus <u>10</u>% plus Duty, if applicable, less any un-incurred charges or expenses."

11.     Clause 32 of the Policy states, in pertinent part:

Notwithstanding anything to the contrary contained elsewhere in this policy, it is understood and agreed that in case of damage to goods and/or merchandise and/or property insured under this policy, The Assured is to retain full and absolute discretion and control over the disposition of all such goods and/or merchandise and/or property. It is understood that The Assured shall be the sole judge as to whether disposal or sale of such goods and/or merchandise and/or property is detrimental to its interest. The Insurer shall be given the opportunity to have a representative in attendance.

Any goods and/or merchandise and/or property which the Assured deems unfit for sale . . . shall be treated as a constructive total loss, and the Assured shall dispose of the goods and/or merchandise and/or property to its best advantage with This Insurer being entitled to its share of the net proceeds resulting from such disposition, or the goods and/or merchandise and/or property shall be destroyed after notification to This Insurer and any expenses incurred in connection with such destruction shall be borne by This Insurer.

This Insurer shall be given the opportunity to have a representative in attendance during such destruction.

12.     The third paragraph of Clause 39 of the Policy states:

With respect to any goods and/or merchandise and/or property for which it is deemed by The Assured to be impractical to destroy all evidence of The Assured's connection therewith, This Assurer agrees to waive its right to salvage and The Assured is granted the option to destroy such damaged goods and/or merchandise and/or property.  If the insured exercises its option to destroy any damaged goods and/or merchandise and/or property This Assurer shall be given the opportunity to have a representative in attendance during such destruction.

13.     Clause 50 of the Policy provides that National Fish "shall report to Arthur J. Gallagher Risk Management Services, Inc. ["Gallagher"], for transmission to [GAIC] . . . every loss or damage which may become a claim under this insurance as soon as may be practicable after it becomes known to [National Fish's] Corporate Risk Manager or equivalent."

14.     Clause 52 of the Policy provides, in pertinent part, that GAIC shall make payment on a covered claim 30 days after satisfactory proof of loss is provided.

**The Ammonia Leak**

15.     National Fish stores seafood merchandise at the Americold Facility.

16.     The Americold Facility is a controlled temperature storage facility specifically covered by the Policy.

17.     On or about June 9, 2015, a substantial ammonia leak (the "Ammonia Leak") occurred at the Americold Facility, resulting in ammonia permeating the facility.

18.     At the time of the Ammonia Leak, National Fish was storing approximately 2,667,382.5 pounds of frozen shrimp and clam merchandise (the "Subject Goods") at the Americold Facility.

19.     The Subject Goods constitute "goods" as defined in the Policy.

20.     The Ammonia Leak caused "physical loss or damage" to the Subject Goods.

21.     The Ammonia Leak constituted an "external cause" of physical loss or damage to the Subject Goods.

**The Claim**

22.     National Fish promptly reported the Ammonia Leak and the resulting physical loss or damage to the Subject Goods to GAIC (via Gallagher, per Clause 50 of the Policy).

23.     On September 25, 2015, counsel for National Fish sent a letter to counsel for GAIC requesting payment under the policy in the amount of $13,302,365.96 and attaching records substantiating the scope and valuation of National Fish's loss (except with respect to costs of destruction of the Subject Goods, which has yet to occur) as well as correspondence from representatives of the U.S. Food and Drug Administration advising that the Subject Goods were adulterated and unfit for human consumption due to the Ammonia Leak.

24.     On October 15, 2015, GAIC requested additional information from National Fish via email.  On November 3, 2015, National Fish provided the additional materials supporting its claim as requested by GAIC.

25.     On November 20, 2015, counsel for National Fish sent a second letter to GAIC reiterating National Fish's request for payment under the Policy.  National Fish restated its determination, per Clause 32, that a constructive total loss of the Subject Goods had occurred and advised GAIC that, per Clause 39, third paragraph, National Fish had determined that it would be impractical to destroy all evidence of National Fish's connection with the Subject Goods via repackaging, such that National Fish was entitled to elect to destroy the Subject Goods at GAIC's expense, with GAIC required to waive any right to salvage.

26.     All requirements to invoke GAIC's obligation under the Policy to cover National Fish for the loss of the Subject Goods have been satisfied.

27.     Accordingly, GAIC has a duty under the Policy to pay in full National Fish's losses, valued per the terms of the Policy, and including costs of destruction of the Subject Goods and all associated expenses.

28.     The Subject Goods remain at the Americold Facility.  Americold has stated that, effective October 1, 2015, National Fish will be assessed storage charges for Americold's continued warehousing of the Subject Goods.

29.     GAIC has refused to pay National Fish's loss resulting from the Ammonia Leak in full, asserting that, except with respect to clam merchandise, and contingent only upon the results of certain testing GAIC intends to propose, the Subject Goods should be "reboxed" and placed in the stream of U.S. commerce.

30.     GAIC's failure to honor its obligations under the Policy has resulted in substantial monetary damage to National Fish.

**Count I**
**(Breach of Contract)**

31.     National Fish realleges and incorporates herein by reference paragraphs 1-30.

32.     The Policy constitutes a binding contract of insurance.

33.     National Fish has performed its obligations under the Policy.

34.     GAIC has breached the Policy in wrongfully refusing to compensate National Fish in full for its losses.

35.     As a result of GAIC's breach of the Policy, National Fish has suffered substantial damages.

**Count II**
**(Declaratory Judgment)**

36.     National Fish realleges and incorporates herein by reference paragraphs 1-35.

37.     A controversy exists between National Fish and GAIC concerning National Fish's prerogative under the Policy to declare the Subject Goods a total constructive loss and destroy them, with GAIC bearing the expenses incurred in connection with such destruction.

38.     This controversy has caused substantial actual monetary loss to National Fish.

39.     Pursuant to 28 U.S.C. §§ 2201 and 2202, National Fish is entitled to a declaration that it may determine the Subject Goods to be a total constructive loss under the Policy and destroy them, with GAIC bearing the expenses incurred in connection with such destruction.

<u>**Count III**</u>
**(Violation of Massachusetts General Laws Chapter 93A)**

40.     National Fish realleges and incorporates herein by reference paragraphs 1-39.

41.     Massachusetts General Laws ch. 93A, § 2 prohibits the use or employment of unfair or deceptive acts or practices in the conduct of trade or commerce.

42.     GAIC is engaged in the conduct of trade or commerce within the Commonwealth of Massachusetts.  Such conduct includes but is not limited to contracting with National Fish.

43.     GAIC has committed unfair acts in the conduct of trade or commerce through, *inter alia*, refusing without any plausible basis to honor the prerogatives explicitly conferred upon National Fish by Clause 32 and Clause 39 of the Policy to determine the disposition of the Subject Goods, by refusing to pay National Fish's loss in full, including costs of destruction of the Subject Goods, and by compelling National Fish to institute this litigation to recover amounts due under the Policy.

44.     The unfair acts in issue took place primarily and substantially in Massachusetts.

45.     GAIC's violations of Mass. Gen. Laws ch. 93A, § 2 were knowing and willful.

46.     National Fish has suffered monetary damages as a consequence of GAIC's violations of Mass. Gen. Laws ch. 93A, § 2 and is entitled to all damages authorized by Mass. Gen. Laws ch. 93A, § 11.

## RELIEF REQUESTED

WHEREFORE, National Fish respectfully requests that this Court:

   a.     Enter judgment on Count I of this Complaint against GAIC in an amount equal to the damages National Fish has incurred and will incur as a result of GAIC's breach of its obligations under the Policy, plus interest;

   b.     Enter a declaratory judgment under Count II of this Complaint that National Fish has the prerogative under the Policy to declare the Subject Goods a total constructive loss and destroy them, with GAIC bearing the expenses incurred in connection with such destruction;

   c.     Enter judgment on Count III of this Complaint and award National Fish the following relief:  all damages caused by GAIC's violation of Mass. Gen. Laws ch. 93A, § 2 described in Count III; double or treble those damages as a consequence of GAIC's knowing and willful violations of Mass. Gen. Laws ch. 93A, § 2; and National Fish's attorney's fees and expenses;

   d.     Award National Fish its costs and attorney's fees; and

   e.     Grant such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a jury trial on all claims so triable.

Dated:  December 4, 2015

Respectfully submitted,

By:   /s/  *Tarron L. Gartner*
      Tarron L. Gartner-Ilai
      State Bar No. 18686175
      tarron@amystewartlaw.com
      Marisa Jeffrey
      State Bar No. 24075611
      marisa@amystewartlaw.com
      AMY STEWART PC
      5307 E. Mockingbird Lane, Suite 425
      Dallas, Texas  75206
      (214) 233-7076 – telephone
      (214) 975-2806 – facsimile


Of counsel

Martin C. Pentz
mpentz@foleyhoag.com
Brendan T. Jarboe
bjarboe@foleyhoag.com
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA 02210-2600
(617) 230-1000 - telephone
(617) 230-7000 - facsimile

**ATTORNEYS FOR PLAINTIFF**
**NATIONAL FISH AND SEAFOOD, INC.**

4841-9311-2107, v.  1